UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00273-FDW-DSC

| | |
|---|---|
| REYNOLDS INNOVATIONS INC., )<br>)<br>Plaintiff, )<br>)<br>)<br>vs. )<br>)<br>SMOKE ANYWHERE FOR )<br>PENNY'S LLC d/b/a )<br>"SmokeAnywhereForPennys.com"; )<br>PENNY SADLER, individually and )<br>d/b/a )<br>"SmokeAnywhereForPennys.com"; )<br>and TOMMY SADLER, individually )<br>and d/b/a )<br>"SmokeAnywhereForPennys.com"; )<br>)<br>Defendants. )<br>_____ ) | ORDER OF FINAL JUDGMENT AND PERMANENT INJUNCTION BY DEFAULT |

**THIS MATTER** is before the Court on the Motion for Final Judgment and Permanent Injunction by Default (the "Motion"), filed September 21, 2015, by Plaintiff Reynolds Innovations Inc. ("RII") against Defendants Smoke Anywhere for Penny's LLC d/b/a "SmokeAnywhereForPennys.com"; Penny Sadler, individually and d/b/a "SmokeAnywhereForPennys.com"; and Tommy Sadler, individually and d/b/a "SmokeAnywhereForPennys.com." Doc. No. 15.

The Court has reviewed RII's Motion, together with its accompanying Brief in Support, and the other supporting materials previously filed with the Court. Based upon those materials, and upon the proceedings previously had in this Civil Action, RII's Motion

1

is hereby **GRANTED**, and, in support of the final judgment and permanent injunction by default entered herein, the Court makes the following findings of fact and conclusions of law:

## **FINDINGS OF FACT**

### **Jurisdictional and Procedural Findings**

1. RII commenced this Civil Action No. 3:15-cv-273 by filing its Complaint with this Court on June 23, 2015. Doc. No 1. The Defendants named in the Complaint were Defendants Smoke Anywhere for Penny's LLC d/b/a "SmokeAnywhereForPennys.com"; Penny Sadler, individually and d/b/a "SmokeAnywhereForPennys.com"; and Tommy Sadler, individually and d/b/a "SmokeAnywhereForPennys.com" (collectively "Defendants").

2. The Complaint alleged claims against Defendants for trademark infringement under the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125; trademark dilution under the Lanham Act, 15 U.S.C. § 1125; trademark infringement and unfair competition under the common law of the State of North Carolina; and unfair and deceptive trade practices under North Carolina law, N.C. Gen. Stat. § 75-1.1 *et seq*.

3. This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338. As to the state law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendants because Defendants reside and do business in North Carolina and within this judicial district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that, on information and belief, Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

6. On June 25, 2015, Defendant Smoke Anywhere for Penny's LLC was duly served by serving a copy of the Summons and Complaint with the owner of Defendant Smoke Anywhere for Penny's LLC, Defendant Penny Sadler.

7. Also on June 25, 2015, Defendant Penny Sadler was personally served with a copy of the Summons and Complaint.

8. Defendant Tommy Sadler was duly served by leaving a copy of the Summons and Complaint at his dwelling at 3014 Plantation Road, Charlotte, North Carolina, 28270, with someone of suitable age and discretion who resides there, namely, Defendant Penny Sadler.

9. Defendants have each failed to file an answer or otherwise file an appropriate response to the Complaint.

10. On August 11, 2015, RII filed a Motion for Entry of Default against Defendants under Fed. R. Civ. P. 55(a). (Doc. No. 12.) The Clerk of Court granted RII's Motion for Entry of Default on August 13, 2015, and Defendants' defaults have been entered on the record. (Doc. No. 14.)

11. On September 21, 2015, RII filed the instant Motion, seeking the entry of a final judgment and a permanent injunction, by default, against Defendants.

## The CAMEL Marks

12.     RII is a trademark holding company and subsidiary of R.J. Reynolds Tobacco Company. RII is the owner of distinctive trademarks consisting of the word "CAMEL," alone or in conjunction with other design elements and words. RII, through its predecessors-in-interest and affiliates, has used the CAMEL marks continuously for more than one hundred (100) years in connection with tobacco products, including but not limited to cigarettes.[1]

13.     RII has registered its CAMEL marks on the Principal Register of the United States Patent and Trademark Office ("USPTO") under, *inter alia*, U.S. Trademark Registration Nos. 126,760; 1,030,232; 1,391,824; 3,211,464; and 3,512,391.[2]  Each of these registrations has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

14.     As a result of more than a century of continuous use and promotion of the CAMEL Marks, RII's CAMEL Marks have acquired a high degree of recognition, fame, and distinctiveness throughout the United States as symbols of the highest quality of tobacco products. The public is uniquely aware of the CAMEL Marks and identifies those marks with Reynolds.

15.     The CAMEL Marks are famous trademarks that are widely recognized by the general public as a designation of the source of Reynolds's goods. The CAMEL Marks

---

[1] For convenience, and unless the context indicates otherwise, the term "Reynolds" is used to refer collectively to RII's predecessors-in-interest and to RII's corporate affiliates who use the trademarks owned by RII under authority from RII.

[2] For convenience, the marks shown in these registrations, and their common-law counterparts, are collectively referred to hereinafter as the "CAMEL Marks."

became famous trademarks before any of Defendants' conduct, discussed below, commenced.

## The LUCKY STRIKE Marks

16. RII is the owner of distinctive trademarks consisting of the words "LUCKY STRIKE," alone or in conjunction with design elements or other words. RII, through its predecessors-in-interest and affiliates, has used the LUCKY STRIKE marks continuously for more than one hundred thirty (130) years in connection with tobacco products, including but not limited to cigarettes.

17. RII has registered its LUCKY STRIKE marks on the Principal Register of the USPTO under, *inter alia*, U.S. Trademark Registration Nos. 118,372; 366,744; and 404,302.[3] Each of these registrations has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

18. As a result of more than a century of continuous use and promotion of the LUCKY STRIKE Marks, RII's LUCKY STRIKE Marks have acquired a high degree of recognition, fame, and distinctiveness throughout the United States as symbols of the highest quality of tobacco products. The public is uniquely aware of the LUCKY STRIKE Marks and identifies those marks with Reynolds.

19. The LUCKY STRIKE Marks are famous trademarks that are widely recognized by the general public as a designation of the source of Reynolds's goods. The LUCKY STRIKE Marks became famous trademarks before any of Defendants' conduct,

---

[3] For convenience, the marks shown in these registrations and their common-law counterparts, are collectively referred to hereinafter as the "LUCKY STRIKE Marks."

discussed below, commenced.

## The DORAL Mark

20. RII is the owner of a distinctive trademark consisting of the word "DORAL." RII, through its predecessors-in-interest and affiliates, has used the DORAL mark continuously for nearly fifty (50) years in connection with tobacco products, including but not limited to cigarettes.

21. RII has registered its DORAL Mark on the Principal Register of the USPTO under, *inter alia*, U.S. Trademark Registration No. 836,213.[4] This registration has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

22. As a result of nearly fifty years of continuous use and promotion of the DORAL Mark, RII's DORAL Mark has acquired a high degree of recognition, fame, and distinctiveness throughout the United States as a symbol of the highest quality of tobacco products. The public is uniquely aware of the DORAL Mark and identifies this mark with Reynolds.

23. The DORAL Mark is a famous trademark that is widely recognized by the general public as a designation of the source of Reynolds's goods. The DORAL Mark became a famous trademark before any of Defendants' conduct, discussed below, commenced.

## The MISTY Marks

24. RII is the owner of distinctive trademarks consisting of the word "MISTY,"

---

[4] For convenience, the mark shown in this registration and its common-law counterpart, are collectively referred to hereinafter as the "DORAL Mark."

alone or in conjunction with design elements or other words. RII, through its predecessors-in-interest and affiliates, has used the MISTY marks continuously for more than twenty-five (25) years in connection with tobacco products, including but not limited to cigarettes.

25. RII has registered its MISTY marks on the Principal Register of the USPTO under, *inter alia*, U.S. Trademark Registration Nos. 1,573,726; 2,063,372; and 3,546,846.[5] Each of these registrations has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

26. As a result of more than twenty-five (25) years' of continuous use and promotion of the MISTY Marks, RII's MISTY Marks have acquired a high degree of recognition and distinctiveness throughout the United States as symbols of the highest quality of tobacco products. The public is uniquely aware of the MISTY Marks and identifies those marks with Reynolds.

**The CAPRI Marks**

27. RII is the owner of distinctive trademarks consisting of the word "CAPRI," alone or in conjunction with design elements or other words. RII, through its predecessors-in-interest and affiliates, has used the CAPRI marks continuously for more than fifty (50) years in connection with tobacco products, including but not limited to cigarettes.

28. RII has registered its CAPRI marks on the Principal Register of the USPTO under, *inter alia*, U.S. Trademark Registration Nos. 748,337; 1,819,152; and 1,850,012.[6]

---

[5] For convenience, the marks shown in these registrations and their common-law counterparts, are collectively referred to hereinafter as the "MISTY Marks."
[6] For convenience, the marks shown in these registrations and their common-law counterparts, are collectively referred to hereinafter as the "CAPRI Marks."

Each of these registrations has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

29. As a result of more than fifty (50) years' of continuous use and promotion of the CAPRI Marks, RII's CAPRI Marks have acquired a high degree of recognition and distinctiveness throughout the United States as symbols of the highest quality of tobacco products. The public is uniquely aware of the CAPRI Marks and identifies those marks with Reynolds.

### Defendants' Unlawful Conduct

30. Defendants, without RII's permission or authorization, have advertised and have offered for sale liquid nicotine products bearing the CAMEL Marks, or colorable imitations thereof; the LUCKY STRIKE Marks, or colorable imitations thereof; the DORAL Mark, or colorable imitations thereof; the MISTY Marks, or colorable imitations thereof; and the CAPRI Marks, or colorable imitations thereof.

31. Defendants operate and control the Internet website located at <www.smokeanywhereforpennys.com > ("Defendants' Website"), through which Defendants promote and sell, among other items, flavored liquid nicotine products for use with electronic cigarettes bearing, without RII's authorization, the CAMEL Marks, LUCKY STRIKE Marks, DORAL Mark, MISTY Marks and CAPRI Marks, or colorable imitations of these marks owned by RII.

### CONCLUSIONS OF LAW

32. RII owns valid trademark rights in the CAMEL Marks, LUCKY STRIKE Marks, DORAL Mark, MISTY Marks and CAPRI Marks. *See, e.g., Lone Star Steakhouse*

*& Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 935 (4th Cir. 1995) ("incontestable status does entitle the mark to substantial protection . . . and does provide conclusive evidence of Plaintiffs' right to use the mark in commerce as established in 15 U.S.C. § 1115(b)"). Defendants' use of RII's CAMEL Marks, LUCKY STRIKE Marks, DORAL Mark, MISTY Marks and CAPRI Marks, or colorable imitations of these marks, is likely to cause consumer confusion. RII has therefore established Defendants' infringement of RII's registered CAMEL Marks, LUCKY STRIKE Marks, DORAL Mark, MISTY Marks and CAPRI Marks, in violation of Lanham Act § 32(a), 15 U.S.C. § 1114(1)(a). *See, e.g., Lone Star Steakhouse & Saloon*, 43 F.3d at 930; *Commcn's Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1253 (4th Cir. 1970).

33. For the reasons set forth above, and because the elements of unfair competition by false designation of origin under the Lanham Act are substantially the same as those for infringement, RII has also established the requisite elements of its claim against Defendants for unfair competition under Lanham Act § 43(a), 15 U.S.C. § 1125(a). *See, e.g., Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("Under 15 U.S.C.A. § 1125(a), the test is substantially the same, whether there is a confusing similarity between the two marks.").

34. Long after RII's CAMEL Marks, LUCKY STRIKE Marks and DORAL Mark became famous, Defendants used the CAMEL Marks, LUCKY STRIKE Marks and DORAL Mark, or colorable imitations of these marks, in such a way as to dilute the famous CAMEL Marks, LUCKY STRIKE Marks and DORAL Mark. Defendants' designations

"KAMEL", "LUCKY STRIKE" and "DOR-AL" and RII's CAMEL Marks, LUCKY STRIKE Marks and DORAL Mark, respectively, are so similar as to give rise to an association between the marks, and such association between the parties' marks is likely to impair the distinctiveness of or harm the reputation of the CAMEL Marks, LUCKY STRIKE Marks and DORAL Mark. RII has established Defendants' unlawful dilution of the famous CAMEL Marks, LUCKY STRIKE Marks and DORAL Mark pursuant to Lanham Act § 43(c), 15 U.S.C. § 1125(c).

35. Defendants' conduct constitutes unfair or deceptive trade practices in violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1 et seq. *See First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998). *See also Polo Fashions*, 816 F.2d at 148.

36. The "North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement." *Polo Fashions*, 816 F.2d at 148. The same undisputed facts that establish Defendants' infringement of RII's CAMEL Marks, LUCKY STRIKE Marks, DORAL Mark, MISTY Marks and CAPRI Marks also establish Defendants' unfair competition and trademark infringement in violation of the common law of North Carolina.

37. As a direct and proximate result of Defendants' unlawful activities described above, RII has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill. *See, e.g., Diane Von Furstenberg Studio v. Snyder*, 2007 WL 2688184, at *6 (E.D. Va. Sept. 10, 2007) ("The Fourth Circuit has recognized that 'irreparable injury regularly follows

from trademark infringement.' . . . Therefore, a showing of trademark infringement makes it likely that there has been an irreparable injury to reputation." (internal citation omitted)). Defendants' conduct has caused RII to lose control over the reputation and goodwill symbolized by RII's CAMEL Marks, LUCKY STRIKE Marks, DORAL Mark, MISTY Marks and CAPRI Marks. Such irreparable injury can be remedied only through immediate and permanent injunctive relief. *See, e.g., Lone Star Steakhouse & Saloo*n, 43 F.3d at 939. Consequently, RII is entitled to permanent injunctive relief against Defendants.

## PERMANENT INJUNCTION AND ORDER

Based on the preceding Findings of Fact and Conclusions of Law, it is hereby **ORDERED, ADJUDGED and DECREED** as follows:

1. Defendants Smoke Anywhere for Penny's LLC d/b/a "SmokeAnywhereForPennys.com", Penny Sadler and Tommy Sadler, and their respective affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, are hereby **PERMANENTLY ENJOINED AND RESTRAINED** from:

   a) using, advertising, promoting, displaying, or making any use whatsoever, in connection with the advertisement, promotion, or sale of tobacco, tobacco-related products, electronic cigarettes or products related to electronic cigarettes, liquid nicotine products, or flavored nicotine products, of (i) the CAMEL Marks, as defined in the Complaint, or colorable imitations thereof; (ii) the LUCKY STRIKE Marks, as defined in the Complaint, or colorable

imitations thereof; (iii) the DORAL Mark, as defined in the Complaint, or colorable imitations thereof; (iv) the MISTY Marks, as defined in the Complaint, or colorable imitations thereof; (v) the CAPRI Marks, as defined in the Complaint, or colorable imitations thereof; and (vi) any other trademark, name, logo, or source designation of any kind that is confusingly similar to or dilutive of any trademark owned by RII;

b) engaging in any other activity constituting an infringement or dilution of any of RII's trademarks; and

c) using any false designation of origin or false representations which are likely to lead the trade, the public, or individuals to believe erroneously that Defendants or their products are in any way sponsored, approved, authorized, or controlled by Reynolds.

2. Within thirty (30) calendar days after the service of this Order, Defendants shall submit to this Court an affidavit or declaration, under oath, describing in detail their respective efforts to comply with, and certifying their compliance with, Paragraph 1 of this Order.

3. This Court shall retain jurisdiction over this matter to enforce any violation of the terms of this Final Judgment and Permanent Injunction by Default. If any such violation occurs, the Court will award (a) injunctive relief enjoining any further breach of this Final Judgment and Permanent Injunction by Default, or such modifications to the present Permanent Injunction and Order as the Court deems appropriate; (b) such other relief as the Court deems just and proper.

4. Except as expressly set forth in this Order, all claims by RII against Defendants are hereby dismissed with prejudice.

IT IS SO ORDERED.

Frank D. Whitney
Chief United States District Judge